IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN WALL MELTON, (TDCJ-CID #1168128) | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION H-05-1278 |
| BRAD LIVINGSTON, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

John Wall Melton, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, alleges civil rights violations resulting from a denial of medical care, improper work assignment, a denial of access to the courts, and retaliation. Melton, proceeding *pro se* and *in forma pauperis*, sues Brad Livingston, Director of TDCJ; Leland Heuszel, Warden of the Byrd Unit; William Samorneh, Medical Director at the University of Texas Medical Branch ("UTMB"); and Lloyd Aschburger, a physician's assistant.

The threshold issue is whether this suit may proceed. For the reasons stated below, this court concludes that Melton's claims are without merit. This suit is dismissed by separate order.

## I. Melton's Allegations

Melton alleges that he suffers from hepatitis C; cirrhosis of the liver; enlarged spleen; rheumatoid arthritis; swelling in the legs; pain in the lower back and legs; chest pains; abdominal pain; chills; severe headaches; and loss of vision in his left eye. He alleges that on October 6, 2004, Physician's Assistant Curry denied him pain medications. Melton had previously received Ibuprofen and Tagamet. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 16). On December 6, 2004, Physician's Assistant Karim prescribed Ranitidine, Dicyclomine, and diphenhydramine. Physician's Assistant Aschburger prescribed Ibuprofen on December 14, 2004.

On December 17, 2004, Melton was scheduled to see Physician's Assistant Karim. Melton alleges Physician's Assistant Aschburger came out of his office and began "screaming" at Melton for talking in the waiting area. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 17). Physician's Assistant Aschburger allegedly told Melton, "if you refuse to see me, I will discontinue your medications." On December 17, 2004, Physician's Assistant Aschburger discontinued the medication that was prescribed by Physician's Assistant Karim, altering the record to make it appear as if he had done so the previous day. Aschburger cancelled the medication as an act of retaliation because Melton would not allow Aschburger to treat him on December 17, 2004. Melton alleges that he was in pain until he was able to get a new prescription for the medication a week later. (Docket

Entry No. 10, Plaintiff's More Definite Statement, p. 12). Melton complains that he was denied the opportunity to choose his medical provider.

In response to Melton's grievance, prison officials stated:

> "According to Mr. Aschburger, P.A., on 12/17 you were talking and making noise in the clinic. He notified security of actions and you were removed and as you were leaving the clinic, you stated, "don't need your damn meds." He dc'ed your meds as you requested on 12/17/04 not 12/16/04 as you state."

(Docket Entry No. 1, Complaint, Attachment 1, p. 2).

Melton received chemotherapy for hepatitis C on the following dates: March 9, March 18, March 25, April 1, April 8, April 15, April 22, April 29, May 6, and May 13, 2005. Melton complains that medical personnel failed to adhere to the manufacturer's warning carefully to monitor patients undergoing chemotherapy. Melton complained of nausea and dizziness, but medical personnel dismissed the complaints as normal side effects of the chemotherapy. Blood tests, however, showed that Melton's blood chemistry was out of control. On May 5, 2005, the dosage was reduced, but Melton continued to suffer. On May 15, 2005, Melton withdrew from the treatment because of the side effects. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 23). Melton complains that he was not allowed to see a gastroenterologist, hepatologist, and rheumatologist. Melton claims that an oncologist should have overseen his chemotherapy.

On April 15, 2005, Melton complained to Major Blanton that the sack lunches served on the third shift lacked the requisite number of calories. Melton presented a sack lunch with

the grievance attached to it to Lieutenant Gary, who began cursing at Melton. Major Blanton said, "if you want to file some action, I will show you some actions." Melton understood this as a threat for engaging in litigation against the TDCJ. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 3). Major Blanton called Melton into his office, yelled at him, and told him to leave before the major "lost his temper."

Major Blanton told Melton that he would be reassigned from the maintenance department to the kitchen. Melton explained that he was infected with the hepatitis C virus and was undergoing chemotherapy, and that placing a person with the hepatitis C virus in the kitchen could put other inmates at risk. Melton also told Major Blanton that taking him out of the air-conditioned maintenance department and putting him in the hot kitchen could be fatal. Despite this explanation, Melton was assigned to the kitchen. Melton experienced chills from the interferon treatment, and the heat of the kitchen made it worse. From April 15 to April 27, 2005, Melton complained to medical staff about the work assignment. On April 28, 2005, Melton was reassigned from the kitchen to the laundry department. On June 15, 2005, Melton stopped the chemotherapy treatment. On June 27, 2005, Melton was reassigned to the kitchen.

Melton met with Warden Kukua on May 27, 2005 to discuss medical issues, work assignment, and Major Blanton. Melton asks to dismiss Warden Kukua from this lawsuit. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 6). Melton filed a grievance, to which Warden Kukua responded on May 31, 2005:

> According to information received from Major Blanton on April 26, 2005, you were interviewed in regard to any complaints that you may have. During the interview, discussions were made on your actions and at no time were any direct or indirect threats made towards you. You were reassigned to the laundry on 4/28/05 due to a medical restriction placed by the medical department. This was for sedentary work only. Folders in laundry may sit while folding. Maintenance work generally requires offender laborers who do not have a sedentary work restriction. This is due to the fact that maintenance workers are required to perform duties in numerous areas throughout the facility to include bending, climbing, lifting fixing.

(Docket Entry No. 14, p. 3).

Melton also alleges that Warden Goodwell interfered with his access to the courts by preventing him from conferring with fellow inmates. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 7). Melton mentions that in September 2004, Goodwell was aware of Melton's desire to confer with Inmate O'Donald. Melton also asked for a change in work assignment so he could confer with another inmate in the law library, but Warden Goodwell denied this request.

Melton seeks injunctive relief in the form of a medical examination by persons outside the TDCJ. He also seeks $11,000,000.37 in damages.

Melton recently filed another federal suit raising civil rights claims. In Civil Action Number 4:04-3406, Melton complained that a parole officer delayed his release on parole by suggesting that there was a sexual element to Melton's offense of aggravated assault. Melton also complained of the denial of access to the courts. The federal court dismissed

the claims as lacking in merit. Melton also raised a medical care claims relating to the lack of a proper diet. Those claims were dismissed as duplicative of this lawsuit.

### III. The Standard of Review

Under 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The court is to dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A governs this suit by a prisoner against a prison official.

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

### IV. The Claims Based on the Denial of Adequate Medical Care

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the

prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)). Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Stewart,* 174 F.3d at 534 (citing *Estelle,* 429 U.S. at 104). Malpractice and negligent treatment do not rise to the level of a constitutional tort. *See Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). A claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer,* 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a

substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Farmer*, 511 U.S. at 842 & n.8).

Deliberate indifference is an extremely high standard to meet. An incorrect diagnosis by prison medical personnel does not state a claim for deliberate indifference. *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. The decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. Therefore, Melton's claims should be dismissed as frivolous under 28 U.S.C. § 1915A(b)(1).

Melton complains of Physician's Assistant Aschburger's cancellation of medications on December 17, 2004. The grievances submitted by Melton show that he refused to be examined by Physician's Assistant Aschburger and said he did not need those medications. (Docket Entry No. 1, Complaint, Attachment 1, p. 2). Melton acknowledges that the prescription was reinstated a week later. By his own admissions, Melton was receiving treatment for various conditions. He was seen by medical personnel on numerous occasions

and was receiving medications and chemotherapy. This evidence of examinations and treatment negate Melton's claim of deliberate indifference. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977).

Melton also complains that TDCJ-CID medical personnel did not provide proper care for his conditions. He asserts that medical personnel did not monitor his chemotherapy sufficiently. He claims that he was not allowed to see specialists for his various health problems. Melton claims disagreements with TDCJ medical personnel as to the proper way to treat his health problems. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997). The acknowledged record of examinations, diagnoses, and medications rebuts Melton's allegations of deliberate indifference. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). Melton admits that he was seen by medical personnel on numerous occasions. Melton has not alleged facts demonstrating that the defendants were aware of, and disregarded, a substantial risk of harm. Melton's claim based on deliberate indifference to his serious medical needs is dismissed as frivolous. 28 U.S.C. § 1915A(b)(1).

## V. The Claim Based on Work Assignments

In *Jackson v. Cain,* 864 F.2d 1235, 1247, the Fifth Circuit held that prisoners have no constitutional right to a specific work assignment. The court explained that "prison officials have broad administrative and discretionary authority over the institutions they manage, and lawfully incarcerated persons retain only a narrow range of protected liberty

interest. Classification of inmates is one of those administrative functions." *Cain*, at 1247-48 (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983) and *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983)). The Fifth Circuit has also recognized that prison officials may require inmates with medical conditions to work, provided that the officials do not act with deliberate indifference to the inmate's health or safety. *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001). To establish a constitutional violation regarding a job assignment, the plaintiff must show that the work significantly aggravated a serious medical condition, and that prison officials were aware of the medical condition and ignored it. *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989).

On February 11, 2004, Melton was moved from the laundry department to the maintenance department, which was air conditioned. He complains that in June 2004, he was then reassigned to the kitchen, where it was very hot. Melton states that placement in the kitchen is used as a form of punishment. Twelve days later, he was reassigned to the laundry department, where he was required to perform more physically-demanding work.

The grievances Melton provides show that he was reassigned from the maintenance department to the kitchen because of his medical restrictions. Melton had a "sedentary work only" restriction. The unit requires inmates assigned to the maintenance department to be able to climb and bend. Melton could not and was assigned to the kitchen department. In that department, he complained of the heat. After approximately twelve days, he was reassigned to the laundry department.

In *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994), the plaintiff testified at a *Spears* hearing that when detention officers ordered him to clean floor caulking, he told the officers that he physically could not do the work and had medical restrictions from a back injury. One of the officers threatened plaintiff with a disciplinary report for failure to obey a direct order if he refused to do the cleaning. As plaintiff worked at the cleaning job, his back began to hurt. The officers told him to continue working, even after plaintiff told them of his pain. As plaintiff continued with this work, his pain increased. At some point, he also developed pain in his lower abdomen. Plaintiff finally left the wing after he saw a lump form on his abdomen. Subsequent medical examinations showed that plaintiff had a hernia. Plaintiff testified that if any one of these officers had checked into his medical restrictions, the onset of the hernia could have been avoided. The Fifth Circuit concluded that even under these facts, the deliberate indifference standard was not met. There were no current medical restrictions on the prisoner for his back condition and no objective indication that the prisoner would develop a hernia. The court concluded that even though the prisoner complained of pain, the officer's insistence that he continue to work amounted to no more than negligence. *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (defining "wanton").

Melton has not alleged facts that, if proven, would show that the defendants knew of, and disregarded, a substantial risk to Melton's health and safety. To the contrary, prison officials were aware of Melton's medical restrictions and were taking steps to change work

assignment to be consistent with those medical restrictions. The facts Melton alleges do not demonstrate that he faced an obvious risk to his health or safety by working in the kitchen or laundry departments. Melton has failed to allege facts that, if proven, would justify an inference that the defendants ignored a substantial risk to Melton's health, in violation of the Eighth Amendment. Melton's improper work assignment claim lacks an arguable basis in law. It is dismissed.

## VI.  The Claim Based on a Denial of Access to the Courts

Prisoners have a constitutionally-protected right of access to the courts. *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir. 1993), *cert. denied,* 510 U.S. 1123 (1994). Inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis,* 518 U.S. at 355. Courts have required that the access be "adequate, effective, and meaningful." *See Bounds,* 430 U.S. at 824-25. The State must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law" or other persons who can provide legal assistance. *Id.* at 824-28.

Prison officials have considerable discretion in choosing what forms of assistance to give prisoners to allow them to file nonfrivolous legal claims. *See Lewis,* 518 U.S. at 356. Restrictions on direct access to legal materials may be warranted when prison security is involved. *See Eason v. Thaler,* 73 F.3d 1322, 1329 (5th Cir. 1996). Arbitrary limitations

and restrictions on access to legal materials may be unconstitutional. *See Eason v. Thaler,* 14 F.3d 8, 9-10 (5th Cir. 1994) (holding that allegations of a total denial of all access to the prison law library for twenty-five days following a prison riot stated a constitutional violation). To prevail on a denial of access to the courts claim, a plaintiff suing under section 1983 must establish that he has been prejudiced in connection with some identifiable past, pending, or proposed legal proceeding. *See Lewis v. Casey,* 518 U.S. 343, 349-53 (1996).

Melton complains that prison officials have tampered with mail. He also complains that he asked that his work assignment be changed so that he could confer with another inmate in the law library. In response to his request Officer Constanado stated, "You have been provided with numerous scheduled law library sessions and have refused to attend. Job change will not be permitted per Warden Goodwell. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 44).

Melton has not made any allegation that he has been prejudiced in connection with some identifiable past, pending, or proposed legal proceeding. *See Lewis v. Casey,* 518 U.S. 343, 349-53 (1996). There is nothing to suggest that Melton was prevented in any way from initiating or pursuing litigation. Nothing in the record shows that the defendants interfered with Melton's ability to bring contemplated challenges to his sentence or his conditions of confinement before the courts. Melton filed a state application for postconviction relief. Melton also filed and litigated Civil Action Number 4:04-3406, as well as this lawsuit. Melton has not shown that his position as a litigant in a specific case was prejudiced in any

way. As noted, Melton raised a similar claim in Civil Action No. 4:04-3406. That claim was dismissed as frivolous, and is in this case as well.

## VII. The Retaliation Claim

A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983). Prison officials must have wide latitude in the control and discipline of inmates, but that "latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)). These limitations do not unduly restrict prison officials' actions legitimately motivated by concerns for prison order and discipline. *Id.*

The Fifth Circuit has recognized that "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996), quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995).

To state a valid claim for retaliation under section 1983, a prisoner must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for

his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir.), *cert. denied,* 522 U.S. 995 (1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker,* 857 F.2d 256, 258 (5th Cir. 1988). He must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied,* 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

With respect to the first element, that the petitioner must show that he was the victim of retaliation for engaging in constitutionally-protected activities, the Fifth Circuit has placed clear limits:

> . . . [N]either any frivolous filings nor secondary litigation activity, *i.e.*, legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may comprise the basis of a retaliation claim. Conversely, a parole panel's consideration of such unprotected activity in denying a prisoner parole does not infringe that prisoner's constitutional right of access to the courts. *Id.* at ----, 116 S.Ct. at 2182 ("[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").
>
> . . .
>
> In concluding that the prisoners' constitutional right of access to the courts had been violated, the magistrate judge plainly

> considered, and proceeded throughout on the assumption, that any and all prisoner writ writing or litigation activity was constitutionally protected. At no point did he ever distinguish between frivolous filings and secondary activity on the one hand and protected filings of at least arguable merit on the other.

*Johnson v. Rodriguez*, 110 F.3d at 311. Frivolous filings and secondary activities, such as legal research and writing for another inmate as a writ writer, may not form the basis of a retaliation claim. *Id.* A prisoner does not have a potentially meritorious retaliation claim when his underlying complaint, grievance, or lawsuit is frivolous.

Melton claims the defendants are retaliating against him for the following actions:

(1)   he complained of the medical treatment of inmate Craig Preston in October 2003;

(2)   Melton wrote a letter to advise a family member of an inmate's death on November 3, 2003, but he received no response because prison officials tampered with the mail;

(3)   Melton met with a parole officer on November 24, 2003;

(4)   In December 2003, the Unit Classification Committee assigned Melton to the laundry because Melton's hepatitis C virus prevented him from working in the kitchen;

(5)   Melton asked for treatment of his hepatitis C virus;

(6)   On February 11, 2004, Melton was reassigned from the laundry to the maintenance department;

>   (7)   After complaining of the medical treatment for his virus, medical personnel began treatment;
>
>   (8)   Melton continued to use the grievance system; and
>
>   (9)   Melton complained that the TDCJ was not taking adequate measures to stop the spread of the hepatitis C virus.

(Docket Entry No. 10, Plaintiff's More Definite Statement, pp. 31-39).

Melton must show that he engaged in constitutionally-protected litigation activity and that action was taken "in an effort to chill [prisoners'] access to the courts or to punish [him] for having brought suit." *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997) (quoting *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926 (1994)). Liberally construed, Melton asserts that he complained of improper work assignments and denial of medical care and that the defendants retaliated against him for this conduct. The grievances Melton claims he filed would not support a valid retaliation claim because Melton does not have a federally-protected constitutional right to the medical treatment of his choice or to the work assignment of his choice. An actual or proposed grievance on these issues would not support a claim of retaliation.

Melton also complains that prison officials retaliated against him by interfering with his ability to confer with fellow inmates about proposed litigation. He states that he asked that his work assignment be changed so he could confer with a fellow inmate in the law library on a state application for postconviction relief. This court's online research reveals

that Melton's habeas application is pending before the Texas Court of Criminal Appeals. This court has determined that Melton has not shown that his position as a litigant was prejudiced and that his access to the courts claim lacks merit.

In *Jones v. Greninger*, 188 F.3d 322 (5th Cir. 1999), the Fifth Circuit found that limiting an inmate's access to the law library to five hours a week as a result of a job reassignment did not violate his right of access to the court. Because the inmate failed to show a violation of his right of access to the court, his retaliation claim failed. Similarly, because Melton has alleged no facts showing that the defendants had engaged in conduct that would result in a violation of his right of access to the court, his retaliation claim fails.

Finally, Melton claims that the following acts were done in retaliation:

(1) Parole Officer Lock harassed Melton during a meeting on November 26, 2003;

(2) Melton was denied consideration for parole for three years;

(3) on October 14, 2004, the unit mail room tampered with a letter from the United States Postal Service;

(4) on December 17, 2004, Physician's Assistant Aschburger was deliberately indifferent to medical needs;

(5) prison officials refused to give Melton a new work assignment, preventing Melton from conferring with a fellow inmate;

(6) on April 15, 2005, Melton was reassigned from the maintenance department to the kitchen;

(7) on April 26, 2005, Major Blanton threatened Melton with disciplinary actions;

(8) on April 27, 2005, Major Blanton told Melton that "some major infractions in the way of cases might occur due to the crushing of careers and such;"

(9) on April 28, 2005, prison officials were deliberately indifferent to Melton's medical needs by placing him in a dangerous environment;

(10) on June 16, 2005, the mail room tampered with a letter from the drug manufacturer; and

(11) on June 21, 2005, prison officials violated state law and prison rules regarding food handling.

(Docket Entry No. 10, Plaintiff's More Definite Statement, pp. 41-47).

Melton has not alleged a chronology of events from which retaliation may plausibly be inferred. Melton bases his claim of retaliation on a variety of events that took place from November 2003 to July 2005. Melton has not alleged more than his personal belief that he was the victim of retaliation. Melton's claim of retaliation fails.

## VIII. Conclusion

The action filed by John Wall Melton (TDCJ-CID Inmate #1168128) lacks an arguable basis in law. His claims are dismissed with prejudice under 28 U.S.C. § 1915A(b)(1). Melton's motion to appoint counsel, (Docket Entry No. 9), is denied as moot. Melton's motion for protective order, (Docket Entry No. 11), is denied because he has

not made the necessary showing.[1] The motion for testing, (Docket Entry No. 12), is denied as moot. The motion to supplement, (Docket Entry No. 14), is granted. Any remaining pending motions are denied as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Melton's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $250.00 is paid in full. The Clerk is directed to provide a copy to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and Clerk of Court, United States District Court for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, attention: Betty Parker.

SIGNED on December 16, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[1] Four prerequisites must be satisfied before a plaintiff can be awarded preliminary injunctive relief: (1) substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) an evaluation that the threatened injury to the plaintiff outweighs the threatened injury the injunction may cause the defendants; and (4) a determination that the injunction does not disserve public interest. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995), *cert. denied*, 516 U.S. 1166 (1996); *Hay v. Waldron*, 834 F.2d 481 (5th Cir. 1987).